**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DANAHER POWER SOLUTIONS, LLC,** | ) | **CASE NO.: 1:02CV1889** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LAYERZERO POWER SYSTEMS, INC.,** | ) | |
| **et al.,** | ) | **FIRST AMENDED COMPLAINT** |
| | ) | |
| | ) | **(Jury Demand Endorsed Hereon)** |
| **Defendants,** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **RUSSELECTRIC, INC.,** | ) | |
| **99 Industrial Park Road** | ) | |
| **South Shore Park** | ) | |
| **Hingham, MA  02043** | ) | |
| | ) | |
| **New-Party Defendant.** | ) | |

Plaintiff, Danaher Power Solutions, LLC, formerly known as Cyberex, LLC, successor

in interest by merger to Cyberex, Inc. ("DPS"), for its First Amended Complaint against

Defendants LayerZero Power Systems, Inc. ("LayerZero"), Milind Bhanoo ("Bhanoo"), James

K0099261.1

Galm ("Galm"), Anthony Pinkey ("Pinkey") and Russelectric, Inc. ("Russelectric") (collectively,

"Defendants"), states as follows:

## PARTIES

1.      DPS is a Delaware limited liability company authorized to do business and doing business in the State of Ohio, with its principal place of business located at Richmond, Virginia.

2.      LayerZero is an Ohio corporation with its principal place of business located at 8893 Lake In The Woods Trail, Chagrin Falls, Geauga County, Ohio 44023.

3.      Bhanoo is an individual residing at 8893 Lake In The Woods Trail, Chagrin Falls, Geauga County, Ohio 44023.

4.      Galm is an individual residing at 9877 Wilson Mills Road, Chardon, Ohio 44024 and/or 3559 Townley, Shaker Heights, Ohio 44122.

5.      Pinkey is an individual residing at 8893 Lake In The Woods Trail, Chagrin Falls, Ohio 44023 and/or 25 Greenleaf Avenue, Darien, Connecticut 06820.

6.      Russelectric is a Massachusetts corporation having its principal place of business at 99 Industrial Park Road, South Shore Park, Hingham, Massachusetts 02043. On information and belief, Russelectric does business in the State of Ohio.

## VENUE AND JURISDICTION

7.      Jurisdiction is founded upon 28 U.S.C. § 1338 (Patent Claims), 15 U.S.C. § 1125 (Lanham Act), 28 U.S.C. § 1332 (Diversity of Citizenship), and 28 U.S.C. § 1367 (Pendant Jurisdiction).

8.      Venue is proper in the Northern District of Ohio, Eastern Division, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claims occurred

K0099261.1                                      -3-

in whole or in part in this District and/or the property that is the subject of this action is situated in this District, and/or pursuant to 28 U.S.C. § 1400.

9.     This Court has personal jurisdiction over the Defendants pursuant to, and by virtue of, without limitation, the provisions of Ohio Revised Code § 2307.382, including subsections (A)(1), (2), (4), and/or (6) thereof.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

10.     DPS develops and manufactures industrial grade static transfer switch devices which facilitate the protection of computers and other electronic devices from the effects of corrupted or inconsistent power sources.

11.     DPS and its predecessors in interest, Cyberex LLC and/or Cyberex, Inc., have invested substantial money and other resources into researching, developing, and refining the static transfer switch device which DPS markets and sells.

12.     DPS is currently a market leader in terms of sales volume and reputation for quality and performance in the static transfer switch industry.

13.     The status of DPS as a market leader, and the benefits relating thereto, stem in large part from confidential, proprietary, and trade secret information which DPS and its predecessors have developed through significant investments of money and other resources and, as more particularly set forth below, Bhanoo, Galm, and Pinkey (collectively the "Individual Defendants") had access to and acquired such confidential, proprietary, and trade secret information while employed by DPS; such information is not known generally to the public and certainly not to the competitors of DPS.

14.     The confidential, proprietary, and/or trade secret information which DPS possesses is valuable to DPS because, among other things, it is held exclusively by DPS and is not known to DPS's competitors or the public generally.

15.     The Individual Defendants were each formerly employed with DPS.

16.     During his employment with DPS, Bhanoo was Vice President, Sales for DPS.

17.     In his capacity as Vice President, Sales for DPS, Bhanoo had access to and acquired confidential, proprietary, and/or trade secret information (within the meaning of, among other things, Ohio Revised Code §1333.61 et. seq.) of DPS, including, without limitation, strategic planning information, engineering systems, procedures, process, controls, schematics, operating systems, designs, financial information, marketing planning information, marketing studies, pricing information, product designs, future development projects, sales information, services and projected revenues, and budgeting information.

18.     Bhanoo was employed with DPS from May 2, 1993, until March 23, 2001, when he resigned his employment.

19.     On or about May 3, 1993, during his employment with DPS, Bhanoo executed and entered into a Conflict of Interest and Outside Activities Agreement, a true and correct copy of which is attached hereto as Exhibit A and incorporated herein by reference (the "Bhanoo Conflict of Interest Agreement").

20.     Pursuant to the Bhanoo Conflict of Interest Agreement, Bhanoo was, among other things, prohibited from engaging in "outside business activities which involve disclosure of confidential information and imparted to [him]...as a member of the Cyberex team."

K0099261.1                                          -5-

21.     During his employment with DPS, Galm was Vice President, Technology for DPS.

22.     In his capacity as Vice President, Technology for DPS, Galm had access to and acquired confidential, proprietary, and/or trade secret information  (within the meaning of, among other things, Ohio Revised Code §1333.61 et. seq.) of DPS, including, without limitation, strategic planning information, engineering systems, procedures, process, controls, schematics, operating systems, designs, financial information, marketing planning information, marketing studies, pricing information, product designs, and future development projects.

23.     Galm was employed with DPS from May 20, 1991 until March 22, 2001, when he resigned his employment.

24.     On or about May 20, 1991, during his employment with DPS, Galm executed a Conflict of Interest and Outside Activities Agreement, a true and correct copy of which is attached hereto as Exhibit B and incorporated herein by reference (the "Galm Conflict of Interest Agreement").

25.     Pursuant to the terms of the Galm Conflict of Interest Agreement Galm was, among other things, prohibited from engaging in "outside business activities which involve disclosure of confidential information and imparted to [him]...as a member of the Cyberex team."

26.     During his employment with DPS, Pinkey was Regional Sales Manager, New York for DPS.

27.     In his capacity as Regional Sales Marketing, New York for DPS, Pinkey had access to and acquired confidential, proprietary, and/or trade secret information (within the meaning of, among other things, Ohio Revised Code §1333.61 et. seq.) of DPS, including, without limitation, strategic planning information, sales information, services and projected revenues, budgeting information, marketing studies, and financial information.

28.     Pinkey was employed with DPS from May 1, 1997, until July 23, 2001, when he resigned his employment.

29.     During his employment with DPS, Pinkey executed and entered into an Employee Invention and Secrecy Agreement, a true and correct copy of which is attached hereto as Exhibit C and incorporated herein by reference (herein after the "Pinkey Secrecy Agreement").

30.     Pursuant of the terms of the Pinkey Secrecy Agreement, Pinkey was, among other things, prohibited from publishing, disclosing, or authorizing anyone else to publish or disclose, any secret or confidential matter relating to any aspect of the business of DPS learned or acquired by Pinkey in connection with his employment with DPS.

31.     On or about April 22, 1997, Pinkey also executed and entered into a Conflict of Interest and Outside Activities Agreement, a true and correct copy of which is attached hereto as Exhibit D and incorporated herein by reference (the "Pinkey Conflict of Interest Agreement").

32.     Pursuant to the terms of the Pinkey Conflict of Interest Agreement, Pinkey was, among other things, prohibited from engaging in "outside business activities which involve the disclosure of confidential information imparted to [him]...as a member of the Cyberex team."

33.     Prior to leaving his employment with DPS, Galm purged all information shared between the computer network system of DPS and the personal computer owned by DPS and used by Galm in the scope of his employment with DPS.

34.     Galm, with the aid of Pinkey, also purged information shared between the computer network system of DPS and the personal computer owned by DPS and used by Pinkey in the scope of his employment with DPS.

35.     In or around April 2001, the Individual Defendants formed LayerZero for purposes of competing with DPS in the manufacture and sale of industrial-level static transfer switch devices.

36.     Bhanoo is President of LayerZero, Galm is Chief Technical Officer of LayerZero, and Pinkey is Vice President of Sales and Marketing for LayerZero.

37.     Galm, during his employment with DPS, on or about June 28, 1995, executed an employment agreement with DPS (the "Employment Agreement"), a true and correct copy of which is attached hereto as Exhibit E and incorporated herein by reference.

38.     Among other things, the Employment Agreement provides in Section FIVE that Galm "will not engage, directly or indirectly, in any other business or occupation which competes with the business of the Company during the term of this [Employment] Agreement, and any extension thereof...."

39.     Under the terms of the Employment Agreement, said non-compete provision survived the termination of Galm's employment by a period of at least one year following the date of Galm's termination of employment with DPS or its successor.

40.     The Employment Agreement further provides in Section THIRTEEN that Galm "agrees that he will not, during or after the termination of this [Employment] Agreement, and any extensions thereof, furnish or make accessible to any person, firm, corporation or other business entity any financial information, trade secret, technical data or know-how acquired by him during the term of this [Employment] Agreement and any extensions thereof . . . ."

41.     In addition, the Employment Agreement provides in Section FIFTEEN, that any methods, developments, designs, processes, inventions or improvements, whether patented, patentable or unpatentable, which Galm may conceive or make, by himself or jointly with others, which concern the business of DPS shall be and remain the property of DPS and Galm will promptly communicate and disclose all such methods, developments, designs, processes, inventions and improvements to DPS and execute and deliver any instrument or document deemed necessary by DPS for the prosecution of and filing for patent applications.

42.     The Employment Agreement further states that the provisions of Section FIFTEEN thereof survive the termination of the Employment Agreement.

43.     Galm, during his employment with DPS, executed documents assigning to DPS all of his right, title, and interest in and to the inventions represented by the Patents (defined below), including a document assigning to DPS all of his right, title, and interest with respect to, among other things, the invention entitled "New and Improved Static Switch Method and Apparatus" (the "Assignment").  A true and correct copy of the Assignment is attached hereto as Exhibit F and incorporated herein by reference.

44.     Galm purged and erased all information, data and files on the personal computer owned by DPS and used by Galm in the scope of his employment and purged and erased said data from the DPS computer network.

45.     Galm willingly and maliciously participated in the destruction of DPS property and files.

46.     As a result of his deliberate actions, no information is retrievable from the computer network of DPS concerning anything within the scope of Galm's employment, including but not limited to, any work performed by Galm, any product development work, any letters sent or received by Galm, any confidential, proprietary and/or trade secret information and data in the possession of Galm, or any work Galm may have been performing on behalf of himself or LayerZero.

47.     On information and belief, Galm also facilitated the purging and erasure of all information, data and files on the personal computer owned by DPS and used by Pinkey in the scope of his employment and purged and erased said data from the DPS computer network.

48.     Pinkey willingly and maliciously participated in the destruction of DPS property and files.

49.     As a result of his deliberate actions, no information is retrievable from the computer network of DPS concerning anything within the scope of Pinkey's employment, including but not limited to, any work performed by Pinkey, any customer and prospective customer information, including pricing information, any letters sent or received by Pinkey, any

confidential, proprietary and/or trade secret information and data in the possession of Pinkey, or any work Pinkey may have been performing on behalf on LayerZero.

50.     DPS is currently the owner of all right, title, and interest in and to U.S. Patent No. 5,814,904, entitled "Static Switch Method and Apparatus", and dated September 29, 1998 ("Patent 5,814,904"), a true and correct copy of which is attached hereto as Exhibit G and incorporated herein by reference.

51.     DPS is currently the owner of all right, title, and interest in and to U.S. Patent No. 5,644,175, entitled "Static Switch Method and Apparatus", and dated July 1, 1997 ("Patent 5,644,175"), a true and correct copy of which is attached hereto as Exhibit H and incorporated herein by reference.

52.     DPS is currently the owner of all right, title and interest in and to U.S. Patent No. 5,555,182, entitled "Source Quality Monitoring System", and dated September 10, 1986 ("Patent 5,555,182"), a true and correct copy of which is attached hereto as Exhibit I and incorporated herein by reference. (Patent 5,814.904, Patent 5,644,175, Patent 5,555,182 are hereinafter collectively referred to as the "Patents".)

53.     On information and belief, in or around the summer or fall of 2002, the Individual Defendants, on behalf of themselves and/or LayerZero, falsely represented to certain customers of DPS, and possibly others, that the Patents are invalid, and such conduct by Individual Defendants is, or may be, continuing. The false statements by Individual Defendants concerning DPS's Patents were made with reckless disregard for their truth or falsity.

54.     On information and belief, the development, design, and/or manufacture of LayerZero's static transfer switch device was and is based in whole or in substantial part upon

confidential, proprietary, and/or trade secret information belonging to DPS, including the Patents, all of which was acquired by the Individual Defendants while employed with DPS.

55.    Russelectric manufactures for and on behalf of LayerZero the static transfer switch device, the development, design, and/or manufacture of which, on information and belief, was and is based in whole or in substantial part upon confidential, proprietary, and/or trade secret information belonging to DPS, including the Patents, all of which was acquired by the Individual Defendants while employed with DPS.

56.    On information and belief, LayerZero, through its principals, the Individual Defendants, has utilized confidential, proprietary, and/or trade secret information belonging to DPS in order to unfairly and unlawfully compete with DPS by, among other things, contacting DPS's customers to solicit business and soliciting DPS's sales representatives for purposes of selling and/or marketing LayerZero's product.

57.    LayerZero and the Individual Defendants, and each of them, have unlawfully, through improper means, infringed and/or misused, or knowingly permitted the infringement and/or misuse of, DPS's confidential, proprietary, and/or trade secret information and/or Patents, and have otherwise misappropriated DPS's confidential, proprietary, and/or trade secret information and/or Patents, to their own use and for their own benefit, to the detriment of DPS.

58.    On January 31, 2002, counsel for DPS requested that Galm assist in facilitating a reissue application in connection with Patent 5,814,904 pursuant to his contractual obligations as set forth in the Assignment document attached hereto as part of Exhibit F.  A

true and correct copy of correspondence sent by counsel for DPS to Galm's counsel is attached hereto as Exhibit J and incorporated herein by reference.

59.     In response to DPS's request that Galm participate pursuant to his contractual obligation to facilitate the reissue patent application to be filed by DPS, Galm effectively refused, instead demanding unequivocal disclosure of DPS's trade secrets and confidential information, and a significant monetary payment.  A true and correct copy of the letter dated February 6, 2002, which Galm sent to DPS, is attached hereto as Exhibit K and incorporated herein by reference.

60.     The conduct of LayerZero and the Individual Defendants was and has been at all relevant times, willful and malicious and violates the Ohio Uniform Trade Secret Act and Ohio common law.

61.     During their employment with DPS, the Individual Defendants were aware, through verbal and written notice and the agreements to which they were parties, as well as existing circumstances, that the information with which they were dealing and to which they had access (which is the subject of this action), was the property of DPS and was proprietary in nature, constituting the trade secrets of DPS, and was to be kept strictly confidential.

62.     The Individual Defendants, in their capacity as employees of DPS, were privy to confidential, proprietary, and/or trade secret information belonging to DPS.

63.     The similarity of the Individual Defendants' positions, functions, and duties in respect of their positions at LayerZero, to their positions, functions, and duties while employed by DPS, makes inevitable the disclosure/use/misuse by the Individual Defendants and

LayerZero of DPS's confidential, proprietary, and/or trade secret information obtained and possessed by the Individual Defendants.

64.    The confidential, proprietary, and/or trade secret information which the Individual Defendants learned during their employment with DPS will inevitably be disclosed and/or utilized by the Individual Defendants and LayerZero in their efforts to compete with DPS in the following ways, among others: utilizing technical trade secrets in the design and/or manufacture of LayerZero's and the Individual Defendants' static transfer switch devices, and utilizing pricing information to compete with DPS, utilizing strategic planning and marketing studies to unfairly undermine DPS's market position and/or sales prospects.

65.    On June 12, 2002, counsel for DPS sent a letter to the Individual Defendants requesting that they cease and desist their infringing activities.  A true and correct copy of the June 12, 2002 letter sent by counsel for DPS to the Individual Defendants is attached hereto as Exhibit L and incorporated herein by reference.

66.    On June 21, 2002, counsel for the Individual Defendants and LayerZero wrote to counsel for DPS; among other things, counsel for the Individual Defendants and LayerZero suggested that a meeting take place to discuss the relevant issue.

67.    On July 22, 2002, counsel for DPS wrote to counsel for the Individual Defendants and LayerZero, and indicated her agreement to meet with the Individual Defendants and LayerZero on condition that the Individual Defendants and LayerZero allow DPS representatives to inspect relevant documents and other information. A true and correct copy of the July 22, 2002 letter sent by counsel for DPS to counsel for the Individual

Defendants and LayerZero is attached hereto as Exhibit M and incorporated herein by reference.

68.     On or about August 12, 2002, counsel for the Individual Defendants and LayerZero advised counsel for DPS that the Individual Defendants and LayerZero would not meet with DPS representatives under the conditions previously outlined by counsel for DPS. A true and correct copy of a letter dated August 15, 2002, sent by counsel for DPS to counsel for the Individual Defendants and LayerZero relating to this issue is attached hereto as Exhibit N and incorporated herein by reference.

69.     The Individual Defendants and LayerZero's willful and malicious acts of misappropriation, breach of contract, tortious interference with business relationships, breach of fiduciary duty, and unfair competition have caused DPS to suffer actual damages in an amount believed to be in excess of $75,000, but to be proven at trial, and threaten DPS with irreparable harm for which its has no adequate remedy at law.

**FIRST CLAIM FOR RELIEF**
**(Ohio Uniform Trade Secrets Act-Individual Defendants and LayerZero)**

70.     DPS incorporates by reference Paragraphs 1 through 69 above as if fully restated herein.

71.     The Individual Defendants, and each of them, misappropriated, through improper means, the trade secrets of DPS within the meaning of Ohio Revised Code §1333.61 et seq. by, without limitation, breaching their duties, fiduciary and otherwise, as employees of DPS, by failing to maintain as confidential the trade secrets of DPS, and by

using such trade secrets unlawfully to compete with DPS for their own benefit and to the detriment of DPS.

72.     LayerZero knowingly, unfairly, and unlawfully utilized DPS's trade secret information, which was obtained through improper means, for its own purposes and for its own benefit, to the detriment of DPS.

73.     The confidential, proprietary, and/or trade secret information misappropriated by the Individual Defendants and LayerZero included scientific and technical information belonging to DPS relating to DPS's static transfer devices, as well as DPS's related designs, processes, procedures, formulas, patterns, compilations, programs, devices, methods, techniques, and/or improvement information, together with business information or plans, financial information, and/or customer list identification belonging to DPS, all of which derived independent economic value to DPS, actual and/or potential, from not being generally known to and/or not being readily ascertainable through proper means by, other persons who could obtain economic value from disclosure or use of said information; LayerZero is and has at all relevant times been fully aware of the confidential and proprietary nature of this information and the duty of the Individual Defendants to preserve its security.

74.     On information and belief, LayerZero continues to be in the possession of, and exercises control and dominion over, confidential and proprietary trade secret information of DPS that it continues to use for its benefit without the express or implied permission or authorization of DPS.

75.     The confidential, proprietary, and/or trade secret information belonging to DPS and misappropriated by LayerZero and the Individual Defendants was the subject of

reasonable efforts on the part of DPS to maintain its secrecy and confidentiality, including, without limitation, restricting such information only to those with a need to know.

76.     Unless LayerZero and the Individual Defendants are enjoined from their continued misuse/misappropriation of DPS's confidential, proprietary, and/or trade secret information, DPS will have no adequate remedy at law, and will suffer irreparable injury.

77.     DPS is entitled to injunctive relief, both preliminary and permanent, to enjoin LayerZero and the Individual Defendants from any further use or misuse of DPS's confidential, proprietary, and/or trade secret information.

78.     As a result of the Individual Defendants' and LayerZero's willful and/or malicious conduct in misappropriating DPS's trade secrets, DPS is entitled to punitive and/or exemplary damages in the amount of three times its actual damages in accordance with Ohio Revised Code §1333.63.

79.     DPS is also entitled to recover its attorney's fees in accordance with Ohio Revised Code §1333.64, and any and all other or further relief which may be appropriate pursuant to Ohio Revised Code §1333.61 et. seq.

**SECOND CLAIM FOR RELIEF**
**(Common Law-Individual Defendants and LayerZero)**

80.     DPS incorporates by reference Paragraphs 1 through 79 above as if fully restated herein.

81.     The Individual Defendants, on behalf of themselves and/or LayerZero, breached their duties, fiduciary and otherwise, as employees of DPS in that the Individual Defendants have sought, and continue to seek, unfairly and unlawfully, to compete with DPS by disclosing

and/or utilizing DPS's confidential, proprietary, and/or trade secret information relative to DPS's trade and/or business, in which the Individual Defendants were engaged in the course of their former employment with DPS.

82.    As a result of willful and malicious conduct of LayerZero and the Individual Defendants, including the Individual Defendants' breach of duty and LayerZero's unfair and unlawful use of DPS's confidential, proprietary, and/or trade secret information, DPS is entitled to damages against LayerZero and the Individual Defendants including, among other things, actual damages in an amount believed to be in excess of $75,000.00, but to be proven at trial, as well as injunctive relief to prevent any further use or misuse by Individual Defendants and/or LayerZero of DPS's confidential, proprietary, and/or trade secret information.

### THIRD CLAIM FOR RELIEF
### (Inevitable Disclosure Doctrine-Individual Defendants and LayerZero)

83.    DPS incorporates by reference Paragraphs 1 through 82 above as if fully restated herein.

84.    DPS is entitled to injunctive relief against LayerZero and the Individual Defendants, preventing them from utilizing, misappropriating, and/or otherwise disclosing confidential, proprietary, and/or trade secret information belonging to DPS and obtained by the Individual Defendants during their employment with DPS, which will inevitably be disclosed and/or utilized by LayerZero and the Individual Defendants, to the detriment of DPS and the unfair competitive advantage of LayerZero.

### FOURTH CLAIM FOR RELIEF
### (Patent Infringement-All Defendants)

85.     DPS incorporates by reference paragraphs 1 through 84 above as if fully restated herein.

86.     On or about September 29, 1998, July 1, 1997, and September 10, 1996, respectively, the Patents were duly and legally issued to DPS.

87.     DPS is the owner of all right, title, and interest in and to the Patents.

88.     DPS has fully complied with the requirements of 35 U.S.C. § 287(a) by fixing, or causing to be fixed the word "patent" or the abbreviation "pat", together with Patent No. 5,814,904, Patent No. 5,644,175, and Patent No. 5,555,182 on all products manufactured or sold by, or on behalf of, DPS or any of its licensees, which embody DPS's patented invention(s).

89.     All Defendants have infringed and continue to infringe; have induced and continue to induce others to infringe; and/or have committed and continue to commit acts of contributory infringement of, one or more of the claims of the Patents.  The Defendants' infringing activities in the United States and this District include manufacturing, use, sale, and/or offer for sale of certain items, including the static transfer devices that LayerZero sells, incorporating the characteristics subject to the Patents.  Such infringing activities violate 35 U.S.C. § 271.  Upon information and belief, such infringement has been, continues to be, willful.

90.     As a consequence of the infringing activities of Defendants regarding the Patents as complained of herein, DPS has suffered monetary damages in an amount not yet determined, and DPS will continue to suffer such damages in the future unless and until Defendants' infringing activities are enjoined by this Court.

## FIFTH CLAIM FOR RELIEF
## (Breach of Fiduciary Duty, Duty of Loyalty, and Good Faith-Individual Defendants)

91.     DPS incorporates by reference paragraphs 1 through 90 as if fully restated herein.

92.     The Individual Defendants, as former employees of DPS and/or former officers of DPS, have sought and continue to seek, unfairly and unlawfully, in breach of their duties to DPS, to compete with DPS by utilizing confidential, proprietary, and/or trade secret information relative to DPS's trade and/or business, in which the Individual Defendants were engaged in the course of their former employment with DPS.

93.     DPS has suffered, and will continue to suffer, irreparable harm unless the Individual Defendants and LayerZero are enjoined from continuing to benefit from their breach of fiduciary duties.

94.     DPS has suffered monetary damages as a result of the actions of the Individual Defendants in an amount believed to be in excess of $75,000.00, but to be proven at trial, as well as injunctive relief to prevent any further use or misuse by the Individual Defendants and/or LayerZero of DPS's confidential, proprietary and/or trade secret information.

95.     DPS is also entitled to punitive damages as a result of the Individual Defendants' malicious and intentional conduct.

## SIXTH CLAIM FOR RELIEF
## (Breach of Contract-Galm)

96.     DPS incorporates by reference paragraphs 1 through 95 above as if fully restated herein.

97.    Galm executed and agreed to be bound by the terms and conditions of the Employment Agreement.

98.    Galm has breached the terms of said Employment Agreement by failing to honor the terms thereof, including the non-compete, confidentiality and ownership of inventions provisions.

99.    Galm has also breached and defaulted pursuant to the terms of the Galm Conflict of Interest Agreement by, without limitation, engaging in outside activities involving disclosure and/or use of confidential information imparted to him during his employment with DPS.

100.    As a proximate result of Galm's breach of the Employment Agreement, DPS has been injured in an amount which will, or may be, in part, impossible to be determined.

101.    Paragraph NINETEEN of the Employment Agreement provides that, in the event of a violation by Galm of any of the provisions of the Employment Agreement, DPS "shall be entitled to an injunction to be issued by any court of competent jurisdiction, restraining [Galm]...from committing or continuing any violation of [the Employment Agreement]...."

102.    As a proximate result of Galm's violation and breach of the Employment Agreement, DPS has been irreparably injured and is entitled to injunctive relief.

103.    DPS is also entitled to damages proximately caused by Galm's breach of the Galm Conflict of Interest Agreement in an amount which is currently unknown, but to be proven at trial.

## SEVENTH CLAIM FOR RELIEF
### (Breach of Contract-Pinkey)

104.    DPS incorporates by reference Paragraphs 1 through 103 above as if fully restated herein.

105.    Pinkey beached and defaulted pursuant to the Pinkey Secrecy Agreement by, without limitation, disclosing and/or utilizing secret and confidential information obtained by Pinkey during his employment with DPS for his own benefit and/or for the benefit of LayerZero, and not for the benefit of DPS.

106.    Pinkey has also breached and defaulted pursuant to the terms of the Pinkey Conflict of Interest Agreement by, without limitation, engaging in outside business activities involving the disclosure and/or use of confidential information imparted to him during his employment with DPS.

107.    As a result of Pinkey's breaches of his contractual obligations to DPS, DPS has been damaged in an amount which is currently unknown, but to be proven at trial.

### EIGHTH CLAIM FOR RELIEF
### (Breach of Contract-Bhanoo)

108.    DPS incorporates by reference Paragraphs 1 through 107 above as if fully restated herein.

109.    Bhanoo has breached and defaulted pursuant to the terms of the Bhanoo Conflict of Interest Agreement by, without limitation, engaging in outside business activities involving the disclosure and/or use of confidential information imparted to him during his employment with DPS.

110.    As a result of Bhanoo's breaches of his contractual obligations to DPS, DPS has been damaged in an amount which is currently unknown, but to be proven at trial.

## NINTH CLAIM FOR RELIEF
### (Spoliation-Galm and Pinkey)

111.    DPS incorporates by reference paragraphs 1 through 110 above as if fully restated herein.

112.    Galm and Pinkey's purging of the information and data from the DPS computer network and the computers owned by DPS was intentional and purposeful.

113.    Galm and Pinkey knew that litigation with DPS was probable when they purged the information and data from the DPS computer network.

114.    Galm and Pinkey's willful destruction of property, which could be used as evidence against them, was designed to disrupt DPS's prosecution of any further litigation, including this lawsuit.

115.    DPS never had the opportunity to inspect the property, files, data, and/or documents on the computer network prior to the time of the purging by Galm and Pinkey.

116.    DPS has, or may have been, denied the opportunity of prosecuting fully its claims against all Defendants.

117.    As a result of Galm and Pinkey's destruction of evidence, there has been, and will continue to be, disruption in DPS's case against all Defendants.

118.    DPS has suffered damages proximately caused by the acts of intentional destruction of evidence by Galm and Pinkey related to its claims against all Defendants.

## TENTH CLAIM FOR RELIEF
### (Conversion-Galm and Pinkey)

119.    DPS incorporates by reference paragraphs 1 through 118 above as if fully restated herein.

120.    The information and data from the DPS computer network purged by Galm and Pinkey belonged to DPS.

121.    By purging the information and data from the DPS computer network, Galm and Pinkey exercised wrongful dominion and control over DPS's property to the exclusion of DPS in a manner inconsistent with the rights of DPS.

122.    Galm and Pinkey intended to permanently deprive DPS of its property rights and assets that rightfully belong to DPS.

123.    Galm and Pinkey's actions constitute conversion of property.

124.    Galm and Pinkey's actions have proximately damaged DPS in an amount that is currently unknown, but to be proven at trial.

**ELEVENTH CLAIM FOR RELIEF**
**(Violation of Ohio Revised Code Section 4165.02-Individual Defendants and LayerZero)**

125.    DPS incorporates by reference Paragraphs 1 through 124 above as if fully restated herein.

126.    On information and belief, LayerZero and/or the Individual Defendants have falsely represented to certain customers of DPS, and possibly others, that the Patents are invalid.

127.    These representations are, or may be, continuing.

128.    The conduct of the Individual Defendants, on behalf of themselves and/or LayerZero, violates Section 4165.02 of the Ohio Revised Code, and DPS has suffered, and will continue to suffer, irreparable harm for which there is or may be no adequate remedy at

law, unless the Court enjoins LayerZero and/or Individual Defendants from falsely representing DPS's product and/or its characteristics.

129.    To the extent damages can be measured, the violation by LayerZero and/or Individual Defendants of Section 4164.02 of the Ohio Revised Code, as described above, has damaged DPS in an amount to be proven at trial.

130.    The conduct of LayerZero and Individual Defendants also constitutes disparagement of DPS's static transfer switch product pursuant to Ohio Revised Code Section 4165.02(A)(10), resulting in damages to DPS in an amount to be determined at trial.

## TWELFTH CLAIM FOR RELIEF
### (Violation of Lanham Act-Individual Defendants and LayerZero)

131.    DPS incorporates by reference Paragraphs 1 through 130 above as if fully restated herein.

132.    Statements by Individual Defendants and/or LayerZero that DPS's Patents are invalid constitute false or misleading statements of fact about DPS and/or its product that actually deceive, or have the capacity to deceive, a substantial segment of the intended audience with respect to such false statements, and such statements were intended to be deceptive and relied upon by the intended listener.

133.    The false or misleading statements of LayerZero and/or Individual Defendants about DPS and/or its product are material and are likely to influence purchasing decisions.

134.    The deception created by the false or misleading statements of fact by LayerZero and/or Individual Defendants has resulted and is likely to continue to result in injury to DPS.

135.    On information and belief, the false statements made by LayerZero and/or Individual Defendants were made in interstate commerce.

136.    The false or misleading statements of fact made by LayerZero and/or Individual Defendants constitute a violation of 15 U.S.C. § 1125(a).

137.    As a result of the violation of 15 U.S.C. § 1125(a) by LayerZero and/or the Individual Defendants, DPS has suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law, unless this Court enjoins LayerZero and/or Individual Defendants from falsely representing DPS and/or its product.

138.    To the extent damages can be measured, the violation of 15 U.S.C. § 1125(a) by LayerZero and/or Individual Defendants, as described above, has damaged DPS in an amount to be proven at trial.

139.    The conduct of LayerZero and/or Individual Defendants in making false statements of fact concerning DPS and/or its product constitutes disparagement for which injunctive relief and/or damages are appropriate.

### THIRTEENTH CLAIM FOR RELIEF
### (Defamation-Individual Defendants and LayerZero)

140.    DPS incorporates by reference Paragraphs 1 through 139 above as if fully restated herein.

141.    Statements by LayerZero and/or Individual Defendants concerning the alleged invalidity of DPS's Patents constitutes a false and defamatory statement about DPS.

142.    LayerZero and/or Individual Defendants, without privilege to do so, published false and defamatory statements concerning DPS.

143.    LayerZero and/or Individual Defendants knew, or should have known, that their statements about DPS were false and defamatory.

144.    LayerZero and/or Individual Defendants' false and defamatory statements about DPS have caused injury to DPS's reputation and have adversely affected DPS in its trade of business.

## FOURTEENTH CLAIM FOR RELIEF
### (Disparagement-Individual Defendants and LayerZero)

145.    DPS incorporates by reference Paragraphs 1 through 144 above as if fully restated herein.

146.    LayerZero and/or Individual Defendants, by virtue of their false representations concerning DPS and/or DPS's product, intended to publish their false statements in order to harm the interests of DPS, and the false statements of LayerZero and/or the Individual Defendants were made with reckless disregard for their truth and/or falsity.

147.    The conduct of LayerZero and/or Individual Defendants disparaged DPS and/or DPS's product.

148.    As a result of the disparaging conduct of LayerZero and/or the Individual Defendants, DPS has been damaged in an amount which is currently unknown, but to be proven at trial.

149.    As a result of the defamatory conduct of LayerZero and/or Individual Defendants, DPS has suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff Danaher Power Solutions, LLC, f/k/a Cyberex, LLC, successor in interest by merger to Cyberex, Inc., respectfully requests that the Court enter judgment in its favor, and against Defendants, as follows:

1.    On its First Claim for Relief, together with any other appropriate relief requested below, that the Court enter judgment in favor of DPS, and against the Individual Defendants and LayerZero, in an amount which is currently unknown but to be proven at trial, and which is believed to be in excess of $75,000.00, plus interest, together with injunctive relief and such

other and further relief to which DPS may be lawfully entitled pursuant to, without limitation, Ohio Revised Code §1333.61 et. seq.; and

2.      On its Second Claim for Relief, together with any other appropriate relief requested below, that the Court enter judgment in favor of DPS, and against the Individual Defendants and LayerZero, in an amount which is currently unknown but to be proven at trial, and which is believed to be in excess of $75,000.00, plus interest, together with injunctive relief and such other and further relief to which DPS may be lawfully entitled; and

3.      On its Third Claim for Relief, together with any other appropriate relief requested below, that the Court enjoin the Individual Defendants and LayerZero from any further misappropriation, disclosure, and/or use or misuse of DPS's confidential, proprietary, and/or trade secret information obtained by the Individual Defendants during their employment with DPS, together with such other and further relief to which DPS may be lawfully entitled; and

4.      On its Fourth Claim for Relief, together with any other appropriate relief requested below, DPS prays that the Court enter judgment in favor of DPS, and against all Defendants, jointly and severally, as follows:

   a.      That Defendants be declared to have infringed, induced others to infringe, and/or committed acts of contributory infringement with respect to the claims of the Patents;

   b.      That Defendants, their officers, agents, servants, employees, attorneys, parents, subsidiaries, affiliates, successors, and all others in active concert or participation with them or acting on their behalf be permanently enjoined from further infringement of the Patents.

   c.      That Defendants be ordered to account for and pay to DPS all damages caused to DPS by reason of Defendants' infringement of the Patents pursuant to 35 U.S.C. § 284, including any enhanced damages;

d.    That DPS be granted pre-judgment and post-judgment interest on the damages caused to it by reason of Defendants' infringement of the Patents;

e.    That this be declared an "exceptional case" pursuant to 35 U.S.C. § 285 and that Defendants be ordered to pay DPS attorney's fees and costs;

5.    On its Fifth Claim for Relief, that the Court enter judgment in favor of DPS, and against Individual Defendants, in an amount which is currently unknown but to be proven at trial, and which is believed to be in excess of $75,000.00, plus interest;

6.    On its Sixth Claim for Relief, that the Court enter judgment in favor of DPS, and against Galm, enjoining him from further violation of the Employment Agreement and/or for damages resulting from his breach of the Galm Conflict of Interest Agreement in an amount which is currently unknown, but to be proven at trial, plus interest;

7.    On its Seventh Claim for Relief, that the Court enter judgment in favor of DPS, and against Pinkey, in an amount which is currently unknown, but to be proven at trial, plus interest.

8.    On its Eighth Claim for Relief, that the Court enter judgment in favor of DPS, and against Bhanoo, in an amount which is currently unknown, but to be proven at trial, plus interest;

9.    On its Ninth Claim for Relief, that the Court enter judgment in favor of DPS, and against Galm and Pinkey, in an amount which is currently unknown but to be proven at trial, plus interest; and

10.    On its Tenth Claim for Relief, that the Court enter judgment in favor of DPS, and against Galm and Pinkey, in an amount which is currently unknown but to be proven at trial, plus interest; and

11.     On its Eleventh Claim for Relief, that the Court enter judgment in favor of DPS, and against LayerZero and/or the Individual Defendants, jointly and severally, for injunctive relief and/or for damages in an amount which is currently unknown, but to be proven at trial, plus interest;

12.     On its Twelfth Claim for Relief, that the Court enter judgment in favor of DPS, and against LayerZero and/or the Individual Defendants, jointly and severally, for injunctive relief and/or for damages in an amount which is currently unknown, but to be proven at trial, plus interest;

13.     On its Thirteenth Claim for Relief, that the Court enter judgment in favor of DPS, and against LayerZero and the Individual Defendants, jointly and severally, in an amount which is currently unknown, but to be proven at trial, plus interest;

14.     On its Fourteenth Claim for Relief, that the Court enter judgment in favor of DPS, and against LayerZero and the Individual Defendants, jointly and severally, in an amount which is currently unknown, but to be proven at trial, plus interest;

15.     That the Court enjoin Defendants, as appropriate, their officers, agents, servants, employees, attorneys, parents, subsidiaries, affiliates, successors, and all others in active concert or participation with them or acting on their behalf, from:

    a.      disclosing, DPS's confidential, proprietary, and/or trade secret information;

    b.      from continuing to manufacture, market, promote or sell products derived, in whole or in part, from DPS's confidential, proprietary, and/or trade secret information; and

    c.      from otherwise unlawfully utilizing DPS's confidential, proprietary, and/or trade secret information.

16.     That the Court award/order appropriate relief in favor of DPS, to include the following:

a.      Preliminarily and permanently enjoin Defendants, as appropriate, from destroying, altering or modifying any information in their possession that relates to DPS's confidential business information and trade secrets;

b.      Order that Defendants, as appropriate, return immediately all documents and other tangible items that contain confidential business information or trade secrets of DPS, including but not limited to, all such records and data stored in machine-readable or other intangible form;

c.      Order Defendants, as appropriate, to account to DPS for all of their revenue and profits attributable to their use of DPS's confidential business information and trade secrets;

d.      Award to DPS a reasonable royalty based on Defendants' misappropriation of DPS's confidential business information and trade secrets, as appropriate;

e.      Award to DPS enhanced damages as provided by law;

f.      Award DPS punitive damages in an amount sufficient to punish Defendants, as appropriate, for the foregoing wrongful conduct and to deter future wrongful conduct; and

g.      Award to DPS prejudgment interest, if applicable.

17.     That the Court award DPS its costs and expenses herein, including its reasonable attorneys fees, and such other and further relief to which it may be entitled in law and/or in equity.

## **JURY DEMAND**

DPS hereby demands a trial by jury on all issues so triable.


*/s/ Donna M. Flammang*
Donna M. Flammang (0013868)
*dflammang@taftlaw.com*
Timothy J. Duff (0046764)
*tduff@taftlaw.com*
Stephen H. Jett (0046821)
*sjett@taftlaw.com*
TAFT, STETTINIUS & HOLLISTER LLP
3500 BP Tower, 200 Public Square
Cleveland, Ohio 44114
(216) 241-2838
Fax:  (216) 241-3707

Attorneys for Plaintiff Danaher Power Systems,
LLC f/k/a Cyberex, LLC

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing First Amended Complaint with Jury Demand was filed electronically on February 28th, 2003, with service being sent to all parties by operation of the Court's electronic filing system.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the court's system.

*/s/ Donna M. Flammang*
One of the attorneys for Plaintiff